George HEITMANIS, et al., Plaintiffs,

and

Michigan Republican State Central
Committee, Intervening Plaintiff,

v.

Richard AUSTIN, et al., Defendants,

and

Senator Vernon J. Ehlers, et al.,
Intervening Defendants.

No. 87–CV–4465–DT.

United States District Court,
E.D. Michigan, S.D.

Jan. 28, 1988.

As Amended Feb. 11, 1988.

Sean F. Cox, Kitch, Saurbier, Drutchas, Wagner & Kenney, Detroit, Mich., James F. Schoener, Washington, D.C., for plaintiff Heitmanis, et al.

Michael A. Gagleard, Gagleard, Addis, Imbrunone, Troy, Mich., for intervening plaintiff.

Gary P. Gordon, Asst. Atty. Gen., Lansing, Mich., for defendant Richard Austin, et al.

David W. McKeague, Foster, Swift, Collins & Coey, Lansing, Mich., for intervening defendants.

## MEMORANDUM OPINION AND ORDER

WOODS, District Judge.

Plaintiffs bring this constitutional challenge to several sections of the Michigan Election Law, Mich.Comp.Laws (M.C.L.) § 168.1 *et seq.* The state statute grants automatic delegate status at state and county conventions, as well as automatic membership on county executive committees, to party nominees and party legislators. As such, claim plaintiffs, the statute violates their First Amendment rights of free association and free expression, as well as their right to vote. Defendants, in addition to arguing the constitutionality of the state statute, raise several procedural barriers to the relief requested by plaintiffs. These barriers include the doctrine of abstention, absence of state action, and justiciability. Defend-

ants base their abstention argument on a parallel proceeding brought by intervening defendants in state court. *Ehlers v. Michigan Republican State Central Committee*, No. 87–56036–CZ (Kent Cty. Circuit Ct.), *aff'd*, Nos. 105399 & 105690 (Mich.Ct. App.), *leave to appeal denied*, 429 Mich. 894 (1988).

Plaintiffs are five individuals who have been elected delegates to the January 14, 1988 county and district conventions of the Republican Party of Michigan. Defendants serve as Secretary of State and Director of Elections for the State of Michigan. The Michigan Republican State Central Committee (State Central Committee) has intervened as plaintiff. Three of the five original plaintiffs, George Heitmanis, John Pafford, and Richard Bobosky, are also members of the State Central Committee. Intervening defendants consist of numerous county and state officeholders and nominees. As officeholders and nominees, they had the right under the election statute to participate as at-large delegates or precinct delegates to county and district conventions held on January 14, 1988.

Prior to the January 14, 1988 conventions, however, the State Central Committee adopted rules prohibiting intervening defendants from participating as at-large delegates to the conventions. As a result of the conflict between the State Central Committee (attempting to enforce newly adopted delegate selection rules) and intervening defendants (officeholders and nominees asserting statutory right to participate in county conventions), competing delegations have been elected in the county conventions. Party rules require that issues of competing delegations be resolved at the State Convention to be held on January 30, 1988.[1] Plaintiffs, however, believe that the dispute can be resolved as a matter of constitutional law.

Before addressing the procedural barriers to plaintiffs' claims, an outline must be given of the delegate selection process provisions of the Michigan Election Law and the various rules adopted by the National Republican Party and the Michigan Republican Party.

MICHIGAN ELECTION LAW

Plaintiffs in their first amended complaint seek declaratory relief that M.C.L. §§ 168.595a & 168.599(5) are unconstitutional as applied to the Michigan Republican Party. In their Memorandum of Law in support of their motion for summary judgment, plaintiffs additionally request that M.C.L. §§ 168.611, 168.593, 168.595, 168.598 & 168.599(1) be declared unconstitutional. These sections may be summarized as follows:

—§ 168.611 provides that delegates elected to the prior fall county convention shall reconvene in the presidential year. Two district delegates from each congressional district shall be selected in caucus to act as National Convention Delegates for each party.

—§ 168.593 sets the number and apportionment of delegates to the state party convention based upon the vote in each county for the party's candidate for Secretary of State in the last preceding November election.

—§ 168.595 provides for the apportionment of county delegates based upon the vote for the party's candidate for Secretary of State in the last preceding November election.

—§ 168.595a provides that "[i]n addition to the delegates to the state convention as provided by [§ 168.595], all incumbent members of the state legislature shall be entitled to attend the convention of their political party as delegates at large of the county in which they maintain their legal residence."

—§ 168.598 requires the state central committee of each political party to forward to the chairman of each county committee "a copy of the call for the fall state convention" indicating the number of delegates to which each county shall be entitled, based upon the votes cast for

---

1. The State Convention meets for the purpose of electing 77 delegates and alternates to the 1988 Republican National Convention.

the party's nominee for Secretary of State in each of the counties at the last preceding November election. In addition to the proportionate number of delegates, the state central committees shall allocate an additional number of delegates corresponding to the number of incumbent legislators nominated by their party and residing in such county.

—§ 168.599(1) provides that, in counties with a population less than 1,500,000, persons nominated to county offices and state legislative offices, along with an equal number of persons selected from the delegates to the county convention, shall make up the executive committee of the county party with the authority to select its officers.

—§ 168.599(5) makes all party nominees to county offices delegates at-large to county conventions.

### NATIONAL REPUBLICAN PARTY RULES

National Republican Party rules governing the selection of national convention delegates and alternates are adopted at the preceding national convention. For example, the 1988 Republican National Convention rules were adopted at the 1984 convention. Republican National Party Rule 31(r), adopted at the 1980 Republican National Convention, did not permit "automatic delegates at any level of the delegate selection procedures who serve by virtue of party position or elective office." Rule 5 of the 1984 Michigan Republican Convention Rules expressly incorporated national rule 31(r).

Intervening defendants offer an affidavit of Roger Allan Moore, general counsel to the Republican National Committee and to the Standing Committee on Rules of the Republican National Committee. He states that following the 1980 Republican National Convention, the Technical Amendments Subcommittee became aware that 18 states permitted or required participation of party or elected officials as automatic delegates in county (or precinct) caucuses or conventions. To make the National Party rules consistent with the procedures adopted by those states, the Standing Committee on Rules of the Republican National Commit-

tee recommended a revision of the prohibition against automatic delegates. Accordingly, on August 20, 1984, the 1984 Republican National Convention adopted a recommendation of the Committee on Rules and Order of Business and amended rule 31(r). The amended rule, renumbered as rule 32(b)(7), provides that "[t]here shall be no automatic delegates to the *national convention* who serve by virtue of party position or elective office." As indicated above, 32(b)(7) applies to all 1988 delegate selection procedures. Moore states that the 1988 Republican National Party rules do not prohibit automatic delegates to any county, district, or state conventions conducted for the purpose of electing national convention delegates. Moore Affidavit ¶¶ 6-8.

Moore also discusses the effect of rule 32(a), which reads as follows:

#### RULE No. 32

Election of Delegates and Alternate Delegates

(a) Order of Precedence.

Delegates at large and their alternate delegates and delegates from Congressional districts and their alternate delegates to the national convention shall be elected in the following manner:

(1) In accordance with any applicable laws of a state, insofar as the same are not inconsistent with these rules; or

(2) To the extent not provided for in the applicable laws of a state, in accordance with any aplicable Republican Party rules of a state, insofar as the same are not inconsistent with these rules; or

(3) By a combination of the methods set forth in paragraphs (a)(1) or (a)(2) of this rule; or

(4) To the extent not provided by state law or party rules, as set forth in paragraph (c) of this rule.

According to Moore, the 1988 National Republican Party Rules incorporate state law by reference. The National Party Rules also take precedence over state party rules. In his view, because the 1988 Rules incorporate state law, any state party that adopts rules that conflict with state law runs the risk that the Committee on Credentials, as well as the 1988 Republican

National Convention, will find that the rules of the National Party bar the seating of any delegates and alternate delegates elected in violation of such state law. Moore Affidavit ¶¶ 10, 14; *see also* National Rules Nos. 38–40 (intra-party procedures for settling delegate credentials disputes).

STATE REPUBLICAN PARTY RULES

On December 7, 1985, the State Central Committee adopted rules for the selection of delegates to the 1988 Republican Party county, district, state, and national conventions. The rules deleted the previous reference to National Party Rule 31(r) that appeared in the 1984 State Party rules. The rules also removed provisions barring nominees for county and state legislative offices from serving as automatic or at-large delegates to county, district, and state conventions. The rules, however, retained a provision in the last paragraph of rule 5 that restricted incumbent members of the State Legislature from being automatic delegates to county and state conventions under National Party Rule 32(c)(5):

In accordance with Rule No. 32(c)(5) of the official rules adopted by the 1984 Republican National Convention, "No delegates shall be deemed eligible to participate in any Congressional district or state convention the purpose of which is to elect delegates to the national convention who are elected prior to the date of the issuance of the call of such national convention." This means that although according to Michigan law (MCLA 168.-595a) "... all incumbent members of the state legislature shall be entitled to attend the convention of their political party as delegates at large of the county in which they maintain their legal residence ...", for purposes of the 1988 State Convention, incumbent members of the state legislature are not automatic delegates at large and cannot participate in the selection of state or national delegates and alternates unless they are elected as delegates to the county and state conventions.

Intervening defendants offer an affidavit from E. Spencer Abraham, Chairman of the State Central Committee, to clarify the applicability of National Rule 32(c)(5) to county and state conventions. He states that National Rule 32(c)(5) presented a serious problem if it applied to Michigan county conventions:

[I]t would not only bar state legislatures —whose nominations took place in August 1986 and election in November 1986 prior to the issuance of the call to the national convention—from serving as delegates to those conventions, but it also could have been interpreted to bar precinct delegates—elected in August, 1986, prior to the issuance of the national call —from such conventions.

Abraham Affidavit ¶ 10. Abraham states that he discussed this problem with Roger Allan Moore. Both agreed that National Rule 32(c)(5) was not applicable since Michigan's 1988 county conventions selected state, not national delegates. *Id.* ¶ 11. Abraham then conveyed this view to party leaders, none of whom "expressed disagreement with this opinion." *Id.* ¶ 12. Moore states that National Rule 32(c)(5) applies only in the absence of contrary state law; if there is governing state law, as there is in Michigan, it supersedes National Rule 32(c)(5). Moore Affidavit ¶¶ 9, 11.

On December 13, 1986, the State Central Committee amended the 1988 State Party Rules, which it had adopted one year earlier. Rule 5 was renumbered as rule 4, but continued to provide that incumbent members of the state legislature were not automatic delegates at-large and, unless elected as delegates to county and state conventions, could not participate in the selection of state or national delegates. The State Central Committee, however, added a new paragraph to the rule. The additional paragraph clarified that all nominees for county and legislative office, pursuant to M.C.L. § 168.599(5), were at-large delegates to the 1988 county convention.[2]

**2.** The State Central Committee on December 13, 1986 also adopted a "Clarification of Election Law," further showing that nominees for county and state legislative offices were entitled by

state law to participate as at-large delegates to county conventions:

Therefore, at-large delegates (nominees for county and legislative offices) occupy their

**1352**

In April of 1987, a dispute arose among the various 1988 Republican Party presidential campaigns concerning exactly who could be delegates to the 1988 county conventions. A "Revision Committee" was formed, but was unable to reach a solution acceptable to all groups. As a result, the Revision Committee forwarded to the State Central Committee a memorandum reflecting the Revision Committee's agreement to continue to negotiate the definition of who could be a delegate to the county conventions.

On September 15, 1987, the State Central Committee amended rule 4 to provide that nominees for county and state legislative officers were not entitled to serve as at-large delegates to the 1988 county and district conventions:

C. *Candidates as Delegates*

In accordance with Michigan Election Law (MCLA 169.619)(4): "A person who is a delegate to a state or county convention of his political party only by virtue to being a member of the state legislature in such capacity shall not participate directly in the process of selecting delegates to his party's national convention ..." This means that although according to Michigan Election Law (MCLA 168.595a), "All incumbent members of the state legislature shall be entitled to attend the convention of their political party as delegates at large of the county in which they maintain their legal residence ..." For purposes of the 1988 county (district) and state conventions incumbent members of the state legislature are *not* automatic delegates at large and *cannot* participate in the selection of state delegates and alternates unless they were elected as precinct delegates in the August 5, 1986 primary.

In addition prior nominees for county office or for the state legislature are *not* automatic delegates at large and *cannot* participate in the selection of state and national delegates or alternates unless they are elected as delegates to the county (district) and state conventions. (emphasis in original).

The amendment to rule 4 would have excluded as many as 1,200 nominees from an automatic role in the January 14, 1988 county conventions. The county conventions select 1,805 delegates to the January 30, 1988 state convention, which in turn selects 77 delegates to the August 15–18, 1988 national convention. The state convention is particularly important to the presidential campaigns, since the state convention is the first state convention nationwide to select delegates to the national convention.

In the parallel state court proceeding, however, a Michigan circuit court and court of appeals' panel concluded that state law, as incorporated in National Rule 32(a), took precedence over the amendment to rule 4. Notwithstanding the state courts' rulings, competing delegations were elected in the January 14, 1988 county conventions.

## STATE COURT LITIGATION

The state court litigation began shortly after the amendment to rule 4. On October 8, 1987, intervening defendants filed a declaratory judgment action in Michigan circuit court. *Ehlers v. Michigan Republican State Central Committee*, No. 87–56036–CZ. In that action, intervening defendants claimed that the State Central Committee's amendment denying them the right to participate as delegates in the 1988 county and district conventions violated National Republican Party Rule 32(a) and the Michigan Election Law, M.C.L. §§ 168.-611 & 168.599(5), as well as "principles of equity, justice and due process." After entertaining the case on an expedited basis, the circuit court in an oral opinion from the bench on December 4, 1987, held that intervening defendants as a matter of law were entitled to participate in the Republican Party county and district conventions scheduled for January 14, 1988, as at-large delegates pursuant to M.C.L. § 168.599(5). The court further found that

they may participate in all county conventions.

Although the federal cases relied upon by Defendant to protect the right of political parties to free association as against restrictive state law are interesting, there seems to be no question here but that state party rules are subordinate to national party rules, and Rule 32(a) of the latter ... specifically gives state law precedence over state party rules.

The Court is also in agreement with Plaintiffs' contention that Defendant should be equitably estopped from enforcing the resolution at issue. It is simply unfair to change the rules unilaterally in the middle of the game.

Having determined that state law requires the seating of nominees as delegates at large at the January 14, 1988, Republican county conventions, and that state law, by virtue of Republican national party rules supersedes state party rules, and also that the Defendant should be estopped from its recent change in the rules, it appears that the Plaintiffs' Motion for Summary Disposition should be granted and the Defendant's denied. (TR4–5).

The court entered its final order of judgment on December 11, 1987.

One day later, on December 12, 1987, the State Central Committee adopted an amendment to rule 6. The amendment required all counties and districts to use the same system of apportionment to elect delegates to the 1988 State Republican Convention that had been used at the February 3, 1987 county and district conventions to elect delegates and alternates to a February 20, 1987 state convention. As adopted, the amendment conflicted with National Rule 32(a) and M.C.L. § 168.595. In response to the amendment, intervening defendants on December 14, 1987, filed a motion to amend the December 11, 1987 final order of judgment to provide that the

amendment to rule 6 is contrary to National Rule 32(a) and M.C.L. § 168.595, to equitably estop the State Central Committee from enforcing the amendment, and to permit county committees and county and district executive committees to determine the method of selecting delegates. On January 7, 1988, the circuit court granted intervening defendants' motion to amend final order of judgment.

The Michigan Court of Appeals on January 13, 1988, affirmed the circuit court's judgment and order affirming judgment. The Michigan Supreme Court denied leave to appeal on January 25, 1988.

The instant action was filed on December 21, 1987. This Court granted motions to intervene filed by intervening plaintiffs and defendants. On December 23, 1987, plaintiffs filed a motion for summary judgment. Defendants responded on January 7, 1988.[3]

## ABSTENTION

Defendants and intervening defendants argue abstention in general terms, without specifically identifying the kind of abstention applicable to this case and its corresponding legal standard. As Wright, Miller & Cooper, *Federal Practice & Procedure* § 4141, at 446 (1978) note, "it is more precise to refer to 'abstention doctrines,' since there are several distinguishable lines of cases, involving different factual situations, different procedural consequences, different policy considerations, and different arguments for and against their validity." The Supreme Court, lower courts, and commentators have disagreed on the number of abstention doctrines.[4] The abstention doctrines nevertheless can be grouped into several categories. The classic *Pullman*-type abstention, *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), requires a

**3.** On January 12, 1988, this Court entered a Memorandum Opinion and Order of Dismissal. On January 14, 1988, this Court took part in a telephone conference call with attorneys for plaintiffs and intervening defendants. After the conference, this Court on its own motion, *see, e.g., McDowell v. Celebrezze*, 310 F.2d 43 (5th Cir.1962), ordered that the Memorandum Opinion and Order of Dismissal be held in abeyance

and reconsidered, if necessary, following review of the complete record of the state court litigation. *Cf. Lumen Const., Inc. v. Brant Const. Co.*, 780 F.2d 691, 697 n. 4 (7th Cir.1985).

**4.** *See generally* Redish, *Abstention, Separation of Powers, and the Limits of the Judicial Function*, 94 Yale L.J. 71 (1984).

federal court to *stay* its action, pending clarification of unsettled state law by state courts, in order to avoid the unnecessary adjudication of a federal constitutional issue. *Burford* abstention, *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), requires a federal court to *dismiss* a complaint, if there is an adequate state court review of a complex regulatory scheme involving primarily local factors. In such cases, the federal court should avoid needless conflict with a state's administration of its own affairs.

■ Abstention may also apply when there is a related state court proceeding. *Younger* abstention, *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is mandated where, in the absence of bad faith or a clearly invalid state statute, a litigant seeks to enjoin criminal proceedings brought against him in state court. Although *Younger* has been extended to certain civil contexts, *see, e.g., Pennzoil Co. v. Texaco, Inc.*, — U.S. —, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987),[5] "[i]n the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings. Moreover, the basis for the federal relief claimed is generally available to the would-be federal plaintiff as a defense in the state proceeding." *Crawley v. Hamilton County Commissioners*, 744 F.2d 28, 30 (6th Cir.1984). The intervening plaintiff State Central Committee, and the three individual plaintiffs who sit on that committee, were named as defendants in the state court proceeding. Although they were named as defendants, the state court action was filed as a declaratory judgment action seeking to prevent them from enforcing State Republican Party Rules in conflict with National Republican Party Rules and the Michigan Election Law. In the instant case, they are attempting to use this Court not as a shield to a state court enforcement order, but as a means to relitigate issues decided against them in state court.

■ The procedural posture of the instant case, however, is most similar to a fourth and more general form of abstention, referred to as the *"Colorado River* doctrine." The Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), found that concerns for judicial economy could, in very limited circumstances, justify a district court's abstention where there is on-going state-court litigation. As noted by the Sixth Circuit in *Crawley v. Hamilton County Commissioners, supra*, the Supreme Court in *Colorado River*

held that "considerations of 'wise judicial administration, giving regard to conservation of judicial resources,' " created a narrow exception to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* at 817, 96 S.Ct. at 1246. The Court was careful to note that "[o]nly the clearest of justifications will warrant dismissal." *Id.* at 819, 96 S.Ct. at 1247.

The holding in *Colorado River* was clarified in the recent case of *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In *Moses*, the Court listed five factors to be considered when deciding whether to dismiss a federal claim in deference to a parallel, state-court proceeding: (1) whether federal or state law provides the basis for decision of the case, *id.* 103 S.Ct. at 941; (2) whether either court has assumed jurisdiction over any *res* or property; (3) whether the federal forum is less convenient to the parties; (4) avoidance of piecemeal litigation; and (5) the order in which jurisdiction was obtained. *Id.* at 937. "No one factor is necessarily determinative" and there is to be "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighed in favor of the exercise of jurisdiction." *Id.* Other factors may also be considered, particularly the progress that has been

---

**5.** *Cf. Deakins v. Monaghan*, — U.S. —, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988) (district court may not dismiss federal claims for monetary relief if those claims cannot be redressed in state action). Plaintiffs in the instant action seek purely declaratory relief.

made in each of the two actions. *Id.* at 940.

744 F.2d at 30–31.

■ The first factor weighs in favor of retaining jurisdiction since federal law provides the basis for decision of this case. The second factor also indicates that this Court should not dismiss the complaint, since the state court action was strictly an *in personam* action. With respect to the third factor, the federal forum is just as convenient as the state forum. Fourth, there is a great risk of piecemeal litigation by having two courts resolve each of the issues presented by plaintiffs in this case. Entertaining an action virtually identical to the state court proceeding "would waste judicial resources and invite duplicative effort." *Arkwright–Boston Manufacturers Mutual Insurance Co. v. City of New York,* 762 F.2d 205, 211 (2d Cir.1985). The fifth factor requires consideration of the order in which jurisdiction was obtained and the amount of progress made in each forum. The state court action was filed over two months before the instant action and, because it received expedited consideration, has already reached final judgment. Moreover, the state court judgment has been affirmed by an intermediate Michigan appellate court. The state's highest court has denied leave to appeal. In contrast, the parties have filed a complaint and answers and have briefed the summary judgment issue. This Court has yet to rule on any substantive issues.

The Supreme Court in *Moses* also considered the availability of complete relief in the state court. 460 U.S. at 26–27, 103 S.Ct. at 942. Both the circuit court and the Michigan Court of Appeals have issued prompt decisions in an effort to resolve this dispute. Plaintiffs, by raising in the state litigation their constitutional challenges to the Michigan Election Law, manifested their belief that the state courts could grant them complete relief. Should plaintiffs appeal to the United States Supreme Court, *see* 28 U.S.C. § 1257(2), and ultimately prevail, they would obtain all the relief they seek in this Court.

■ Plaintiffs suggest, however, that the instant action differs from the state court litigation since they challenge the constitutionality of several sections of the statute, M.C.L. §§ 168.593, 168.589 & 168.-599(1), which were not challenged in state court. Plaintiffs further suggest that the *Colorado River* doctrine does not apply since additional parties have been joined in the instant action.

Defendants contend that plaintiffs define the issues too narrowly. According to defendants, the main issue raised by plaintiffs in both proceedings is whether the Michigan Republican Party must comply with the state statute in the delegate selection process at county and district conventions. Intervening plaintiff in fact framed the issue in state court in such a broad manner, by claiming that the statute "must yield" to state party rules based on First Amendment freedom of association and one-person, one-vote privileges. *See* Brief in Support of [Michigan Republican State Central Committee's] Motion for Summary Disposition 20, 27. Defendants further claim that the *Colorado River* doctrine applies "notwithstanding the nonidentity of the parties." *Canady v. Koch,* 608 F.Supp. 1460, 1475 (S.D.N.Y.), *aff'd sub nom. Canady v. Valentin,* 768 F.2d 501 (2d Cir. 1985).

The Court agrees with defendants. In determining whether to apply the doctrine, this Court must "look not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case. If the rule were otherwise, the *Colorado River* doctrine could be entirely avoided by the simple expedient of naming additional parties." *Lumen Const., Inc. v. Brant Const. Co.,* 780 F.2d 691, 695 (7th Cir.1985) (impact of the doctrine "cannot be obliterated by the stroke of a pen") (citations omitted).

The state courts held that the National Party Rules, which incorporate by reference all state laws applicable to the delegate selection process, prevail over contrary rules adopted by the State Central Committee. In so holding, the state courts implicitly upheld the applicability, enforceability, and constitutionality of the addition-

al sections challenged by plaintiffs. Further, the only additional parties to this action are the two individual plaintiffs who are not members of the State Central Committee, and the state defendants charged with enforcing the statute. The key parties to this action, namely the State Central Committee and the intervening defendants, appeared in the state court litigation.[6]

**6.** Alternatively, the advanced stage of the state court litigation requires dismissal of the intervening plaintiff State Central Committee, as well as the three individual plaintiffs who sit on (and are in privity with) the committee, under traditional principles of res judicata.

The Sixth Circuit in its most recent published opinion left open the question of whether the desirability of avoiding duplicative litigation provided sufficient grounds for a court to raise the defense *sua sponte. See Lesher v. Lavrich,* 784 F.2d 193, 195 (6th Cir.1986). Nevertheless, in a subsequent unpublished opinion, the Sixth Circuit upheld a district court's order *sua sponte* dismissing an action under 42 U.S.C. § 1983 as barred by res judicata. *Banner v. Mashburn,* No. 86–6030 (6th Cir. June 1, 1987).

This Court must also give due consideration to the full faith and credit statute, which provides in pertinent part:

The records and judicial proceedings of any court of any ... State ... shall be proved or admitted in other courts within the United States....

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738. According to the Sixth Circuit in *Gutierrez v. Lynch,* 826 F.2d 1534 (6th Cir. 1987), the effect of that statute

is to impose on federal courts "the obligation to give state court judgments the same effect as they have in the state in which they were rendered." *Loudermill v. Cleveland Bd. of Educ.,* 721 F.2d 550, 556 (6th Cir.1983), aff'd, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In other words, if an individual is precluded from litigating a suit in a state court by the traditional principles of res judicata, he is similarly precluded from litigating the suit in federal court. *See Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 482, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982).

In this instance, plaintiff's claim was brought pursuant to § 1983. In *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court held that § 1738 governs § 1983 actions, and may, in certain circumstances, require federal courts to give a state court judgment preclusive effect, at least on the grounds of collateral estoppel or issue preclusion, if not claim preclusion. *See id.* at 97, n. 10, 101 S.Ct. at 416 n. 10. The import of *Allen* is obvious: if a plaintiff has had the opportunity to fully litigate certain issues in a state court proceeding, and the state court has decided those issues adversely to him, § 1738 precludes him from raising those issues in a subsequent § 1983 suit in federal court. *See Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 83, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984).

In deciding whether res judicata or the full faith and credit statute lend preclusive effect to a particular state court decision, federal courts look to the state's law to "assess the preclusive effect it would attach" to that decision. *Loudermill,* 721 F.2d at 557. 826 F.2d at 1537 (footnote omitted). Further, "[t]he test for determining whether a second suit is for the same cause of action as to the first is to consider the facts necessary to sustain the two claims." *Id.* (quoting *Duncan v. Peck,* 752 F.2d 1135, 1139 (6th Cir.1985)).

The instant case involves the identical facts presented in the state court litigation. Intervening plaintiff State Central Committee and the three individual plaintiff members of the committee raised their constitutional claims as a defense, but had summary judgment entered against them. Under Michigan law, they are precluded from bringing their constitutional claims in an independent action and must be dismissed:

It is well established that a cause of action cannot be split by asserting it as a defense in one case and as a basis for affirmative relief in another case. *Leslie v. Mollica,* 236 Mich. 610, 616–618; 211 NW 267 (1926); *Ternes Steel Co. v. Ladney,* [364 Mich. 614, 619, 111 N.W.2d 859 (1961)]; *Schuhardt v. Jensen,* 11 Mich.App. 19, 21; 160 NW2d 590 (1968); *Rinaldi v. Rinaldi,* 122 Mich.App. 391, 399–400; 333 NW2d 61 (1983). The general rule has been enunciated by the Supreme Court as follows:

We conclude that when a litigant's right to affirmative relief is independent of a cause of action asserted against him and it is relied upon only as a defense to that action, he is barred from seeking affirmative relief thereon in a subsequent proceeding. But if he does not rely upon his claim as a defense to the first action, or as a counterclaim thereto, he is not barred from subsequently maintaining his action for affirmative relief in an independent suit. *Mimnaugh v. Partlin,* 67 Mich. 391 [34 N.W. 717 (1887) ], and *Jennison Hardward Co. v. Godkin,* 112 Mich. 57 [70 N.W. 428 (1897) ].

In other words, plaintiff can plead defendant's breach of warranty as a defense in the first suit, he can plead it as a defense and as a counterclaim in the first suit, or he can sue thereon subsequently for affirmative relief, but he cannot combine the alternatives. Once he raises the issue, it must be fully and finally determined. [*Ternes, supra,* 364 Mich. p. 619, 111 N.W.2d 859.]

....

## STATE ACTION

Cases involving the selection of delegates by political parties present difficult issues of justiciability and state action. *Wymbs v. Republican State Executive Committee of Florida,* 719 F.2d 1072, 1076 (11th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984). Because judicial intervention in these areas has been marked by "great caution and restraint," *O'Brien v. Brown,* 409 U.S. 1, 4, 92 S.Ct. 2718, 2720, 34 L.Ed.2d 1 (1972), few guidelines exist for determining whether a court should exercise its article III authority. Additionally, questions of justiciability and state action often intertwine with the merits of a case. *Bachur v. Democratic National Party,* 836 F.2d 837, 840 (4th Cir.1987), *rev'g,* 666 F.Supp. 763 (D.Md.1987); *Ripon Society, Inc. v. National Republican Party,* 525 F.2d 567, 578 & n. 28 (D.C.Cir.1975) (en banc), *cert. denied,* 424 U.S. 933, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976).

Defendants argue that for plaintiffs to prevail on their constitutional challenge to the election statute, plaintiffs must first establish that the rules of the Republican National Committee and the State Central Committee constitute "state action." Plaintiffs' allegations that the statute interferes with their First Amendment rights of free association and free expression, implicate important aspects of the "liberty" assured them by the Fourteenth Amendment's Due Process Clause. *E.g., Tashjian v. Republican Party of Connecticut,* — U.S. —, 107 S.Ct. 544, 548–49, 93 L.Ed.2d 514 (1986) (citing cases). Before this Court may assume jurisdiction over plaintiffs' Fourteenth Amendment claims,[7] there must be state or governmen-

... Under the doctrine of res judicata, as interpreted in *Ternes, supra,* the summary judgment granted in favor of defendant Kenneth Burkhart by the Oakland Circuit Court works as a bar to the maintenance of plaintiff's action filed in the Macomb Circuit Court. *See Detroit v. Nortown Theatre, Inc.,* 116 Mich.App. 386, 393; 323 NW2d 411 (1982), lv den 418 Mich. 875 (1983). A summary judgment is a judgment on the merits which bars relitigation on the basis of res judicata. *Capitol Mortgage Corp. v. Coopers & Lybrand,* 142 Mich.App. 531, 536; 369 NW2d 922 (1985), lv den 424 Mich. 899 (1986).

*Kellepourey v. Burkhart,* 163 Mich.App. 251, 257–58 & 260, 413 N.W.2d 758 (1987).

7. In their first amended complaint, plaintiffs also allege that the automatic inclusion of party nominees and officeholders as delegates to county conventions and as members of county executive committees is antithetical to the rational basis of apportionment of delegates based on the party's vote for Secretary of State at the previous election, and violates the one person, one vote rule enunciated in *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), and *Gray v. Sanders,* 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963). The basis for the one person, one vote rule is the Fourteenth Amendment guarantee of equal protection. Assuming that the one person, one vote rule applies to the selection of delegates to political party nominating conventions, *cf. Cousins v. Wigoda,* 419 U.S. 477, 483 n. 4, 95 S.Ct. 541, 545 n. 4, 42 L.Ed.2d 595 (1975) (declining to decide whether a national party's selection and allocation of delegates was subject to principles set forth in reapportionment decisions); *Gray,* 372 U.S. at 378 n. 10, 83 S.Ct. at 807 n. 10 (applying one person, one vote rule to a primary election used to select candidates for state-wide offices since the state was ruled by a single party; Court left open question of whether rule would apply if nominations were made through a convention system); *but see Ripon,* 525 F.2d at 578–87 (rejecting contention); *Irish v. Democratic–Farmer–Labor Party,* 399 F.2d 119, 119–25 (8th Cir. 1968) (same), plaintiffs must still satisfy the state action requirement discussed in the text. Plaintiffs, however, have not pursued this claim in their later pleadings.

Plaintiffs allege further that the addition of party nominees and officeholders with the right to vote in county conventions and on county executive committees would dilute and debase the voting rights plaintiffs obtained by virtue of being elected precinct delegates to county conventions. Plaintiffs contend that the Voting Rights Act, 42 U.S.C. § 1973 *et seq.,* prohibits such interference with their voting rights. The state action requirement is not a significant barrier to a voting rights claim. Congress enacted the Voting Rights Act to implement the Fifteenth Amendment and banish racial discrimination in voting. *E.g., South Carolina v. Katzenbach,* 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed. 2d 769 (1966). The Fifteenth Amendment contains no state action requirement and, accordingly, has been interpreted as reaching purely private action. *See, e.g., Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); *United States v. Classic,* 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). Similarly, the Voting Rights Act has not been interpreted as containing a strict state action requirement. *See United States v. Board of Commissioners of Sheffield,* 435 U.S. 110, 126–27, 98 S.Ct. 965, 976–77, 55 L.Ed.2d 148 (1978). Should plaintiffs be able to establish that the statute interferes with their rights under the Voting Rights Act, they will have satisfied whatever state action requirement exists. Plaintiffs at this point cannot rely on the

tal action; private conduct, however wrongful it may be, cannot be challenged under the Fourteenth Amendment. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

In early decisions, courts typically subjected actions of a political party to constitutional scrutiny under the Fourteenth Amendment. *See, e.g., Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); *Smith v. Allwright,* 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944). But recently, courts have been hesitant to find state action especially when, as in the instant case, racial discrimination is not involved. *See O'Brien,* 409 U.S. at 4 & n. 1, 92 S.Ct. at 2720 & n. 1; *Ferency v. Austin,* 666 F.2d 1023, 1028 (6th Cir.1981), *aff'g,* 493 F.Supp. 683 (W.D.Mich.1980); *Ripon,* 525 F.2d at 574–76; *cf. Jackson v. Michigan State Democratic Party,* 593 F.Supp. 1033, 1044–46 (E.D.Mich.1984). The Supreme Court in *Cousins v. Wigoda,* 419 U.S. 477, 483 n. 4, 95 S.Ct. 541, 545 n. 4, 42 L.Ed.2d 595 (1975), expressly left open the question of whether decisions by a national political party concerning delegate selection constitutes state action.

In more recent decisions in other contexts, the Court has examined whether the alleged violations of constitutional rights are "fairly attributable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). The Court has fashioned

> a two-part approach to this question of "fair attribution". First, the deprivation must be caused by exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state

official, because he acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.*

 Plaintiffs cannot establish the first part of the *Lugar* test, either on the law or the facts of this case. Plaintiffs correctly note that state law generally must give way to rules adopted by a state political party. *Tashjian, supra; San Francisco County Democratic Central Committee v. Eu,* 826 F.2d 814 (9th Cir. 1987). The distinguishing feature in this case, however, is the National Republican Party's decision to incorporate state laws into the National Party Rules. It is well established that the rules and policies of a national political party take precedence over contrary state political party rules. *See Tashjian, supra; Democratic Party of the United States v. Wisconsin,* 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981); *Cousins, supra.* Should a state party select delegates in a manner contrary to national party rules, the national party may bar such delegates from sitting at the national convention. *Democratic Party of the United States, supra; Cousins, supra.* In short, the National Republican Party, not the state statute, is responsible for the alleged infringement of plaintiffs' constitutional rights.[8]

Nor can plaintiffs offer facts to support the first prong of the *Lugar* test. The parties agree and the record (Thomas Affidavit ¶¶ 7–10) demonstrates that the State Republican Party from 1972 to 1984 refused to follow the election statute in selecting national delegates.[9] *Cf. Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (claim nonjusticiable because statute had been "commonly and notoriously" violated). The State of Michigan never attempted to enforce the statute during that period.[10]

---

Voting Rights Act to establish state action since they have yet to identify what sections of the Act the election statute allegedly violates.

**8.** To the extent plaintiffs would have this Court resolve the conflict between the rules adopted by the State Central Committee and those of the National Republican Party, plaintiffs should have joined the National Party as an indispensible party under F.R.Civ.P. 19. *Wymbs, supra,*

719 F.2d at 1078–80. Moreover, this Court finds that the conflict is an intra-party dispute and therefore nonjusticiable. *See infra* pp. 1359–1361.

**9.** During that period, National Rule 31r barred the automatic seating of delegates.

**10.** In an effort to establish state action, plaintiffs refer the Court to a September 8, 1987

*Ferency v. Austin*, 493 F.Supp. 683 (W.D.Mich.1980), *aff'd*, 666 F.2d 1023 (6th Cir.1981), illustrates the state's refusal to enforce the statute. In that case the state was informed by the Michigan Democratic Party that the party would use a system of party caucuses for the selection of delegates to the national convention. The state rejected plaintiff's demand that it enforce the election statute against the Michigan Democratic Party. The state believed that, under the Supreme Court's decision in *Cousins*, it could not compel a political party to conduct primary elections in accordance with state law. The district court and the Sixth Circuit agreed with the state, concluding that the election statute was unconstitutional as applied to a political party that had adopted an alternate method for selecting delegates. 666 F.2d at 1025, 1028.

## JUSTICIABILITY

 Justiciability is a subspecies of the political question doctrine, in which courts refuse to interfere in issues committed by the constitution to the Legislative or Executive Branch of government. *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962). Justiciability concerns also arise from "the lack of judicially discoverable and manageable standards for resolving" the issue or "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion." *Id.*

The Supreme Court in *O'Brien* cautioned against judicial intervention in internal political party disputes:

No case is cited to us in which any federal court has undertaken to interject itself into the deliberative processes of a national political convention; no holding of this Court up to now gives support for judicial intervention in the circumstances presented here, involving as they do relationships of great delicacy that are essentially political in nature. Judicial intervention in this area traditionally has been approached with great caution and restraint. It has been understood since our national political parties first came into being as voluntary associations of individuals that the convention itself is the proper forum for determining intra-party disputes as to which delegates shall be seated. Thus, these cases involve claims of the power of the federal judiciary to review actions heretofore thought to lie in the control of political parties. Highly important questions are presented concerning justiciability.... Vital rights of association guaranteed by the Constitution are also involved.

409 U.S. at 4, 92 S.Ct. at 2720 (citations omitted).

Chief Justice Rehnquist, in his capacity as Circuit Justice, relied on the above passage in *O'Brien* to stay a district court's order enjoining the Republican National Party from implementing a delegate selection plan. *Republican State Central Committee of Arizona v. Ripon Society, Inc.*, 409 U.S. 1222, 93 S.Ct. 1475, 34 L.Ed. 2d 717 (1972). The district court held the plan unconstitutional because it bore no relation to the state's electoral college vote, previously cast Republican votes, or some combination of the two. 343 F.Supp. 168 (D.D.C.1972). The district court in reaching its conclusion dealt summarily with the justiciability issue. *Id.* at 174. A divided panel of the court of appeals in an unpublished opinion denied a stay of the district court's order. Chief Justice Rehnquist referred to the *O'Brien* passage, and the likelihood of error by the lower courts, in granting a stay.

The Court in later decisions continued to caution against judicial intervention. After holding that a national party's rules concerning qualifications of convention delegates prevailed over contrary state law, the Court in *Cousins*, 419 U.S. at 483 n. 4,

letter from Michigan Assistant Attorney General Gary P. Gordon to a state senator. Gordon, in response to the senator's question concerning the election statute, opined that nominees of a party could participate as at-large delegates to county conventions. Gordon emphasized, however, that the state neither interpreted nor en-

forced the statute, but traditionally let political parties determine their own party procedures. Gordon also warned that his letter should not be construed as a formal Michigan Attorney General Opinion. As a result of these disclaimers, the letter offers little support for a finding of state action.

95 S.Ct. at 545 n. 4, expressly left open the extent to which "principles of the political question doctrine counsel against judicial intervention." In *Democratic Party of the United States*, the Court held that a national party was not bound by a state statute requiring an open presidential primary with delegates selected thereby forced to vote according to the results of the primary. The national party's rule prevented crossover voting in the delegate selection process. The Court found that the party had a First Amendment right to determine the state's delegations to the national convention, and "as is true of all expressions of First Amendment freedoms, the courts may not interfere on the ground that they view a particular expression unwise or irrational." 450 U.S. at 124, 101 S.Ct. at 1020 (footnote omitted).

The United States Courts of Appeals similarly view delegate selection claims as nonjusticiable. The District of Columbia Circuit *en banc* declined to decide the justiciability issue, turning instead to the merits of the constitutional claim. *Ripon, supra.* Four of the ten circuit judges would have held such claims nonjusticiable, 525 F.2d at 592–95 (Danaher, J., concurring); *id.* at 602–04 (Tamm, Robb, J.J., concurring); *id.* at 609–14 (Wilkey, J., concurring), while one judge would have found the claims justiciable. *Id.* at 617 (Bazelon, J., dissenting).

The Fourth Circuit reached a similar conclusion in *Bachur, supra.* Plaintiff, a registered Democrat, brought an equal protection challenge to Democratic National Party Rule 6(C), which requires each state delegation plan to "provide for equal division between men and women and alternate men and alternate women." Pursuant to the national party's directive, the state party adopted a rule requiring the allocation of votes on the basis of the sex of the delegate candidates. Plaintiff could not vote for more than four male and four female delegates.

The Fourth Circuit, merging the issue of justiciability with the merits, found the constitutional challenge nonjusticiable because it lacked merit. The court reasoned that the First Amendment associational rights of the national and state parties to achieve their goal of increasing female participation at the national convention, outweighed the limited restriction on the plaintiff's participation in the primary process. 836 F.2d at 842–43.

The Eleventh Circuit in *Wymbs, supra,* considered the justiciability of claims analogous to those raised in the instant case. Plaintiffs in that case sought to invalidate a rule adopted by the Republican Party of Florida. The rule required three delegates and three alternates to the national convention from each Florida congressional district regardless of the disparity in the number of registered Republicans among the districts. As adopted, the state party's rule contained provisions substantively identical to Republican National Party Rules 30 and 31. 719 F.2d at 1074, 1077. The district court invalidated the rule and enjoined the state party's executive committee from conducting several statutorily mandated functions until the committee weighed its voting on a one registered party member, one vote standard. *Id.* at 1076.

The Eleventh Circuit reversed. After carefully noting the relationship between the national party and state party rules, the court found constitutional challenge nonjusticiable for three reasons. First, the state rule incorporated and was subordinate to the national rules. Since compliance with the national rules was a prerequisite to choosing and seating a state delegation at the national convention, the national party should have been named a party to the case. Without the national party, the court could not afford plaintiffs effective relief. Id. at 1078–80. Second, the First Amendment associational rights possessed by political parties limited the lower court's ability to manage the parties' internal affairs. *Id.* at 1080–84. Third, implementation of the one registered party member, one vote standard presented unmanageable practical and legal problems. *Id.* at 1090–92.

This Court finds the *Wymbs* court's three part approach useful for analyzing the justiciability issue in the instant case. First, this Court cannot afford plaintiffs effective relief without the joinder of the

National Republican Party to this action. Because the state party rules conflict with the National Rules, the national convention may seat only those delegates it deems to have been selected in accordance with the National Rules. A declaration by this Court that the election statute is unconstitutional as applied to plaintiffs would have no effect on the Republican National Party.

Second, the First Amendment rights of the National Republican Party and the State Central Committee prevents this Court's involvement in the parties' internal affairs:

> Our form of government is built on the premise that every citizen shall have the right to engage in political expression and association. Because exercise of these basic freedoms ... has traditionally been through the media of political associations, political parties as well as individual party adherents enjoy First Amendment rights. Moreover, any interference with the freedom of a party is simultaneously an interference with the freedom of its adherents. Thus, courts have placed the internal workings of a political party squarely within the protections of the First Amendment.

*Eu*, 826 F.2d at 818 (citations and footnote omitted).

The National Republican Party, having at least constructive knowledge of Michigan's election statute, *see* Moore Affidavit ¶¶ 6–7, adopted National Rule 32 to mandate that delegate selection comply with state law. Plaintiffs in effect seek to overturn the rule by having the statute declared unconstitutional. Plaintiffs' request would involve this Court in the internal matters of the Republican Party and thus impinge associational rights. In other words, the First Amendment rights plaintiffs so forcefully assert would be jeopardized if they receive their requested relief.

Nor can this Court question the wisdom of the National Party's "initial policy determination," *Baker*, 369 U.S. at 217, 82 S.Ct. at 710, to incorporate state laws granting party nominees and officeholders automatic delegate status to state conventions and membership on state party leadership committees:

"Equal" apportionment of delegates among the states is presumably sought to insure "equal" representation of the people in those states. Yet the actual selection of delegates at the state level varies from the highly democratic to the opposite extreme. In a number of states the selection is made not in a primary election but through a series of local, county, and state caucuses and conventions. Often these are malapportioned, and often voter participation is so slight as to make the selection process one virtually (or even officially) of appointment by party officials. *A practice that is more defensible perhaps, though scarcely more "democratic," is the granting of ex officio delegate status to party officials or public office holders, presumably because of their special wisdom and expertise.*

*Ripon*, 525 F.2d at 584 (footnotes omitted) (emphasis added).

Third, invalidating the election statute would present difficult legal problems:

> A party is after all more than a forum for all its adherents' views. It is an organized attempt to see the most important of those views put into practice through control of the levers of government. One party may think that the best way to do this is through a "strictly democratic" majoritarian. But another may think it can ony be done (let us say) by giving the proven party professional a greater voice than the newcomer. Which of these approaches is the more efficacious we cannot say, but the latter certainly seems a more accurate description of how political parties operate in reality.

*Id.* at 585 (footnotes omitted). It is not the role of this Court to strike the balance between the involvement of party nominees and officeholders and more recent Republican Party members, in the governing of the state party.

## FACIAL CHALLENGE

As indicated in the state action and justiciability discussions, this Court finds little merit in the constitutional challenge to the election statute as it applies to plaintiffs. Plaintiffs nevertheless maintain that the

statute must be declared unconstitutional on its face. In so arguing, plaintiffs rely on the decisions in *Tashjian, Ferency,* and *Eu.* None of those cases involve situations in which a national party, in the exercise of its First Amendment rights, voluntarily incorporated state law in its national party rules. As a result, the cases offer little support for plaintiffs' facial challenge.

In *Tashjian,* a state party adopted a rule permitting individuals who were not registered members of other political parties to vote in the primary election. 107 S.Ct. at 1547. The Court invalidated a statute requiring closed primary elections as it applied to the state party. *Id.* at 554.

The court in *Ferency* held that a state party cannot be required to follow the Michigan election statute if the election statute violates national party rules for the election of delegates to the national convention. 666 F.2d at 1025, 1028. Significantly, the district court in that case emphasized that nothing in its opinion was intended to suggest that the election statute was unconstitutional on its face. 493 F.Supp. at 694 n. 10.

Finally, the court in *Eu* invalidated a state statute because it overwhelmingly favored elected officials and party nominees in the organization of party central committees, over party nominees who did not hold elective office. 826 F.2d at 819–21. Although none of the state parties had adopted rules that conflicted with the challenged statute, the court found no evidence that the state parties voluntarily complied with the statute. Rather, the parties conformed to the statute in order to qualify for the ballot. *Id.* at 823–24 (state could not constitutionally condition a political party's access to the ballot by coercing the party to relinquish some of its First Amendment rights).

The election statute thus offers one method by which a political party, if it so chooses, may select convention delegates. To be sure, the statute favors the interests of entrenched party members at the expense of newer members. But that is no basis for declaring the statute unconstitutional on its face.

## ORDER

For the above reasons, IT IS HEREBY ORDERED that plaintiffs' motions for summary judgment and motion to alter judgment be DENIED, and that the complaint be DISMISSED.

So ordered.