899 F.2d 521
 George HEITMANIS, Keith Murphy, Mary Malinowski, John
Pafford and Richard Bobosky, Plaintiffs-Appellants,
Michigan Republican State Central Committee, Intervening Plaintiff,
v.
Richard AUSTIN, in his official capacity as Secretary of
State of Michigan, and Christopher Thomas, in his
official capacity as Director of
Elections of the State of
Michigan, Defendants-Appellees,
Senator Vernon J. Ehlers, et al., Intervening Defendants.
 No. 88-1214.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 10, 1989.
Decided March 29, 1990.
 
 James F. Schoener (argued), Sarasota, Fla., and James M. Scherer, Southfield, Mich., for plaintiffs-appellants.
 Albert B. Addis, Troy, Mich., for plaintiff-intervenor.
 Gary P. Gordon, Asst. Atty. Gen. (argued), Richard P. Gartner, Asst. Atty. Gen., Office of the Atty. Gen. of Michigan, Frank J. Kelley, Office of the Atty. Gen., Appellate Div., and Louis J. Caruso, Sol. Gen., Lansing, Mich., for defendants-appellees.
 David W. McKeague and Kurtis T. Wilder, Foster, Swift, Collins & Coey, Lansing, Mich., for defendant-intervenor.
 Before JONES and GUY, Circuit Judges, and ENGEL, Senior Circuit Judge.
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 Plaintiffs-appellants, George Heitmanis, et al. (Party Delegates), appeal an order denying summary judgment for plaintiffs and dismissing the complaint in this action challenging the constitutionality of the Michigan Election Law. For the following reasons, we reverse.
 
 I.
 
 2
 The Michigan Election Law (the Election Law), which generally regulates the political party conventions in the State of Michigan, grants automatic delegate status to party nominees and party legislators at state and county conventions. M.C.L.A. Sec. 168.591 et seq. (West 1988). Specifically, the disputed sections of the Law provide for the following:
 
 
 3
 --Sec. 168.611 provides that delegates elected to the prior fall county convention shall reconvene in the presidential year. Two district delegates from each congressional district shall be selected in caucus to act as National Convention Delegates for each party;[1]
 
 
 4
 --Sec. 168.593 provides that the number and apportionment of delegates to the state party convention is based upon the vote in the Secretary of State contest in the preceding November;
 
 
 5
 --Sec. 168.595 provides for the apportionment of county delegates based upon the vote in the Secretary of State contest in the preceding November;
 
 
 6
 --Sec. 168.595a provides that "all incumbent members of the state legislature shall be entitled to attend the convention of their political party as delegates at large of the county in which they maintain their legal residence;"
 
 
 7
 --Sec. 168.598 provides that the state parties shall allocate an additional number of delegates to make room for the incumbent legislators;
 
 
 8
 --Sec. 168.599(1) provides that incumbent legislators nominated by their party, along with an equal number of persons selected from the delegates at the county conventions, shall make up the executive committee of the county party with the authority to select its officers;
 
 
 9
 --Sec. 168.599(5) provides that all party nominees to county and state legislative offices shall be delegates at-large to county conventions.
 
 
 10
 The rules of the National Republican Party (National Party) governing the selection of national convention delegates are adopted at the preceding national convention. Before the 1984 convention, National Party Rule 31(r) did not permit "automatic delegates at any level of the delegate selection procedures who serve by virtue of party position or elective office." J.App. at 96a. The Michigan Republican State Central Committee (State Party) Rules explicitly incorporated this rule into Rule 5, which states that incumbent members of the state legislature would not be automatic delegates at large in the 1984 state and county conventions. Id. at 102. Roger Allan Moore, general counsel to the Republican National Committee (RNC) and to the Standing Committee on Rules of the RNC (Rules Committee), stated that following the 1980 Convention, the Technical Amendments Subcommittee became aware of eighteen states (including Michigan) that permitted or required participation of party or elected officials as automatic delegates in county caucuses or conventions. Id. at 140. In order to make the national party rules consistent with the procedures in these states, the Rules Committee recommended revising Rule 31(r). On August 20, 1984, the Republican National Convention adopted this recommendation.
 
 
 11
 The amended rule, renumbered as Rule 32(b)(7), provides that "there shall be no automatic delegates to the national convention who serve by virtue of party position or elective office." Id. at 117 (emphasis added). Rule 32(c)(5) of the 1988 Rules provides that "no delegates shall be deemed eligible to participate in any Congressional district or state convention the purpose of which is to elect delegates to the national convention who are elected prior to the date of the issuance of the call of such national convention." Id. at 118. However, both of these rules must be placed in the context of the general provision of National Party Rule 32(a):
 
 
 12
 (a) Order of Precedence
 
 
 13
 Delegates ... shall be elected in the following manner:
 
 
 14
 (1) In accordance with any applicable laws of a state, insofar as the same are not inconsistent with these [National Party] rules; or
 
 
 15
 (2) To the extent not provided for in the applicable laws of a state, in accordance with any applicable Republican Party rules of a state, insofar as the same are not inconsistent with these [National Party] rules ...
 
 
 16
 Id. at 117. On the basis of Rule 32(a), Moore explains that since the 1976 Convention, the policy has been that Rule 32(c)(5) only applies if there is no contrary governing state law. Moore concludes that the 1988 Rules explicitly provide insofar as the 1988 Rules incorporated state law, that state law supersedes state party rules where there is a conflict, unless the state statute is declared unconstitutional. Id. at 141-42. Finally, we note that National Rules 38-40 establish procedures for settling intra-party disputes over the seating of delegates.
 
 
 17
 Following the changes in the National Party Rules, on December 7, 1985, the State Party adopted new rules for the 1988 conventions. The new State Party Rule 5 no longer referred to National Party Rule 31(r), but still restricted incumbent members of the state legislature from being automatic delegates to county and state conventions, pursuant to National Party Rule 32(c)(5). These incumbents could participate only if elected as delegates to the county or state conventions. On December 13, 1986, the State Party again amended its rules. Rule 5 was renumbered as Rule 4, but it still provided that incumbent members of the state legislature were not automatic delegates at-large. The Committee also added a new paragraph pursuant to M.C.L.A. Sec. 168.599(5) which clarified that non-incumbent nominees for county and legislative office would be at-large delegates to the 1988 county conventions.
 
 
 18
 In April 1987, a dispute arose among the various 1988 Republican Party presidential candidates concerning who could be delegates to the 1988 county conventions. After failing to reach agreement, the State Central Committee again amended Rule 4 on September 15, 1987 to read as follows:
 
 
 19
 [F]or the purposes of the 1988 county (district) and state conventions, incumbent members of the state legislatures are not automatic delegates at large and cannot participate in the selection of state delegates and alternates unless they were elected as precinct delegates in the August 5, 1986 primary.
 
 
 20
 In addition, prior nominees for county office or for the state legislature are not automatic delegates at large and cannot participate in the selection of state and national delegates or alternates unless they are elected as delegates to the county (district) and state conventions.
 
 
 21
 J.App. at 40 (emphasis in original).
 
 
 22
 On October 8, 1987, State Senator Vernon J. Ehlers and other elected officials and nominees (Officials) sued the State Party in state court, alleging that the State Party's amended Rule 4 denied them the right to be automatic delegates, as required by the Michigan Election Law and National Rule 32(a). On December 11, 1987, the Michigan court held that the Officials were entitled to participate in the county conventions scheduled for January 14, 1988 (Ehlers v. Michigan Republican State Central Committee, No. 87-56036-CZ):
 
 
 23
 Although the federal cases relied upon by Defendant to protect the right of political parties to free association ... are interesting, there seems to be no question here but that state party rules are subordinate to national party rules, and Rule 32(a) of the latter ... specifically gives state law precedence over state party rules.
 
 
 24
 Id. at 77. On December 12, 1987, the State Party amended Rule 6 to require all counties and districts to use the same system of apportionment used at the February 3, 1987 county conventions. Upon motion from the Officials, the Michigan court amended its order to provide that the revised Rule 6 conflicted with M.C.L. Sec. 168.595. On January 13, 1988, the Michigan Court of Appeals affirmed the lower court's judgment. The Michigan Supreme Court denied leave to appeal on January 25, 1988.
 
 
 25
 On December 21, 1987, during the appeal of the state court decision, Heitmanis and the other plaintiffs (Party Delegates) filed the instant action in the United States District Court for the Eastern District of Michigan, Judge George E. Woods presiding. Heitmanis and the other four plaintiffs are all elected precinct delegates who had pledged support to either Jack Kemp or Pat Robertson, Republican presidential candidates, and three of the plaintiffs are members of the Central Committee of the State Party. J.App. at 4-5. The defendants are Richard Austin, the Secretary of State, and Christopher Thomas, the Director of Elections of Michigan. The Officials are intervening defendants, and the State Party is an intervening plaintiff in the instant action. In their complaint, the Party Delegates argued that the Election Law violated their constitutional rights because: the apportionment of delegates violates the one person, one vote principle; the automatic delegates provision debases the voting rights of the elected delegates; and the automatic delegates provision interferes with the First Amendment freedom of association of the State Party. Id. at 9-11.
 
 
 26
 The district court ruled that it need not reach the merits of the claims. Instead, the court dismissed the complaint on several grounds: (1) abstention was warranted under the Colorado River doctrine; (2) there was no state action because the National Party Rules governed; (3) the controversy was a non-justiciable fight between factions of the State Party; and (4) the Election Law was not facially unconstitutional. Heitmanis v. Austin, 677 F.Supp. 1347 (E.D.Mich.1988).
 
 II.
 A.
 
 27
 The district court ruled that the Party Delegates' claim was not justiciable. The court first held that the State Party rules were not in conflict with the Election Law, but instead were incompatible with National Party rules, which it found to have incorporated applicable state law in Rule 32(a). Then relying upon Wymbs v. Republican State Executive Committee of Florida, 719 F.2d 1072 (11th Cir.1983), cert. denied, 465 U.S. 1103, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984), the court ruled that the conflict between the State Party and the National Party was a dispute in which involvement of the courts would not be proper. 677 F.Supp. at 1359-61.
 
 
 28
 Courts have historically been reluctant to intervene in intra-party disputes. In O'Brien v. Brown, 409 U.S. 1, 4, 92 S.Ct. 2718, 2720, 34 L.Ed.2d 1 (1972), the Supreme Court refused to decide a challenge to the seating of Illinois delegates at the 1972 Democratic National Convention. In leaving the issue to the convention, the Court cautioned against judicial intervention in internal political party disputes:
 
 
 29
 [N]o holding of this court up to now gives support for judicial intervention in the circumstances presented here, involving ... relationships of great delicacy that are essentially political in nature ... Judicial intervention in this area traditionally has been approached with great caution and restraint ... It has been understood since our national political parties first came into being as voluntary associations of individuals that the convention itself is the proper forum for determining intra-party disputes as to which delegates would be seated. Thus, these cases involve claims of the power of the federal judiciary to review actions heretofore thought to lie in the control of political parties. Highly important questions are presented concerning justiciability....
 
 
 30
 Id. (citations omitted).
 
 
 31
 Two other circuits considering challenges to the constitutionality of party delegate selection rules have ruled the cases non-justiciable. In Wymbs, two state Republican leaders contended that the Florida Republican Party rules, which required three delegates and three alternates from each Florida congressional district, violated the one person, one vote principle of the Fourteenth Amendment. The court applied the two-part test of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962):
 
 
 32
 The first criterion concerns policymaking: it requires the court to stay its hand when faced with 'the impossibility of deciding [the controversy] without an initial policy determination of a kind clearly for nonjudicial discretion.' ... The second criterion concerns the practicability of a judicial resolution of the controversy; it forbids the court from entertaining the suit if 'judicially manageable standards for resolving' the controversy are absent.
 
 
 33
 Wymbs, 719 F.2d at 1082 (citations omitted).
 
 
 34
 On the basis of this test, the Wymbs court concluded that the case was not justiciable. First, the court determined that the disagreement over the proper method for delegate selection, as a dispute between different groups in the Florida Republican Party, was "a disagreement over a pure question of internal Republican Party policy." Id. The court also found the standards to be unmanageable for the one Republican, one vote test urged by the plaintiffs. In addition, the court ruled that because the National Party was not a party to the lawsuit, it would be unable to afford effective relief to the plaintiff. Regardless of what the court decided on the question of the constitutionality of the State Party rule, the National Party would decide which delegates to admit to the convention. Id. at 1083-84. See also Bachur v. Democratic National Party, 836 F.2d 837, 841 (4th Cir.1987) (a challenge to the National Party's delegate selection rule, which required a proportionate number of delegates to be female, was not justiciable).
 
 
 35
 Though the instant case also involves an intra-party dispute--here between the Bush and Kemp/Robertson forces--we find this dispute to be justiciable for two reasons. First, because the National Party rules do not clearly incorporate the state election law, the disagreement is not a pure question of internal party policy. The National Party rules did not specifically regulate the state party's selection of county delegates; Rule 32(b)(7) prevents automatic delegates at the national convention only. Rule 32(a) provides simply that the delegates be elected in accordance with procedures specified in state law. Roger Moore, general counsel to the RNC, stated that the purpose of the rules changes in 1984 was specifically to allow state laws such as Michigan's to operate. At most, the National Party was willing to tolerate the Election Law for the selection of delegates at the county and state levels; it did not incorporate Michigan law as a National Party rule. As such, the Election Law, not the National Party, specified the rules governing the State Party that are the subject of this case.
 
 
 36
 Second, the National Party could not consent to a state statute that was facially unconstitutional. In Eu v. San Francisco County Democratic Central Committee, --- U.S. ----, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989), the Supreme Court ruled that California's statute banning primary endorsements and restricting internal policy governance of the political parties violated the First Amendment right to free speech and association. The court held that the parties burdened by these unlawful statutes could not consent to their operation:
 
 
 37
 California contends that it need not show that its endorsement ban serves a compelling state interest because the political parties have 'consented' to it.... This argument is fatally flawed in several respects. We have never held that a political party's consent will cure a statute that otherwise violates the First Amendment. Even aside from this fundamental defect, California's consent argument is contradicted by the simple fact that the official governing bodies of various political parties have joined this lawsuit.... That the bylaws of some parties prohibit party endorsements also does not prove consent. These parties may have chosen to reflect state election law in their bylaws, rather than permit or require conduct prohibited by law.... Finally, the State's focus on the parties' alleged consent ignores the independent First Amendment rights of the parties' members. It is wholly undemonstrated that the members authorized the parties' consent to infringement of members' rights.
 
 
 38
 Id. 109 S.Ct. at 1021 n. 15. Similarly, in the instant case, a general statement in National Party Rule 32(a) cannot be interpreted as a far-reaching authorization of every state election law, regardless of its constitutionality. Thus, for the foregoing reasons, we conclude that there is a justiciable controversy over whether the Election Law violated the constitutional rights of the State Party.
 
 B.
 
 39
 The district court ruled that state action, a necessary element of the constitutional claims, was not present because the National Party adopted the Election Law as part of its rules: "In short, the National Republican Party, not the state statute, is responsible for the alleged infringement of plaintiffs' constitutional rights." 677 F.Supp. at 1358. In addition, the court noted that the state did not enforce the Election Law from 1972 to 1984, when it was in contravention of the National Party rules. As such, the court concluded that the state is not responsible for the present action.
 
 
 40
 In Lugar v. Edmonson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982), the Supreme Court set forth a two-part test to determine if the action was "fairly attributable" to the state:
 
 
 41
 First, the deprivation must be caused by exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.
 
 
 42
 We conclude that the action was fairly attributable to the State of Michigan because the State enforced the Election Law. As stated above, National Party Rule 32(a) is a very general rule which allows state laws such as Michigan's to operate. The Michigan state legislature--not the National Party--set up the elaborate scheme of automatic delegates for county and state conventions. In Ehlers, the court of the State of Michigan decided that the National Party rules incorporated the state law, and therefore required the State Party to follow the Election Law and estopped the Party from following its own rules. If the court were properly relying upon the National Party Rules as incorporating the Election Law, it would have let the National Party decide whether to seat the Michigan delegation at the National Convention. Instead, the Michigan state court required the State Party to comply with the Michigan law. As such, we find these actions fairly attributable to the state.
 
 III.
 
 43
 This court reviews abstention decisions de novo. Litteral v. Bach, 869 F.2d 297, 298 (6th Cir.1989). The district court abstained based upon the abstention doctrine enunciated in Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In Colorado River, the Supreme Court held that in "exceptional" circumstances, a federal district court may stay or dismiss an action solely because of the pendancy of similar litigation in state court. Id. at 818, 96 S.Ct. at 1246. The Court held that "considerations of 'wise judicial administration, giving regard to conservation of judicial resources' " created a narrow exception to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Id. at 817, 96 S.Ct. at 1246. This court in Crawley v. Hamilton County Commissioners, 744 F.2d 28, 31 (6th Cir.1984), noted the factors to consider under this doctrine:
 
 
 44
 In Moses [H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ], the Court listed five factors to be considered when deciding whether to dismiss a federal claim in deference to a parallel, state-court proceeding: (1) whether federal or state law provides the basis for decision in the case ... (2) whether either court has assumed jurisdiction over any res or property; (3) whether the federal forum is less convenient to the parties; (4) avoidance of piecemeal litigation; and (5) the order in which jurisdiction was obtained.... 'No one factor is necessarily determinative' and there is a 'careful balancing of the important factors' ... with the balance heavily weighed in favor of the exercise of jurisdiction. (citations omitted).
 
 
 45
 The Supreme Court in Moses also considered the availability of complete relief in the state court. 460 U.S. at 26-27, 103 S.Ct. at 942-43. The district court in the instant case decided that the first three factors weighed against abstention: federal law provided the basis for the case; the state law action was not in rem ; and the federal forum was just as convenient as the state forum. The court noted that the fourth and fifth factors weighed in favor of abstention: there was a danger of piecemeal litigation with the issues discussed in both courts, and jurisdiction was obtained first in state court. The court then concluded that abstention was appropriate because "the state courts implicitly upheld the applicability, enforcement, and constitutionality of the additional sections challenged by plaintiffs" and because "the only additional parties to this action are the two individual plaintiffs who are not members of the State Central Committee." 677 F.Supp. at 1355-56.
 
 
 46
 The key issue in deciding whether abstention was proper is whether complete relief was obtained in state court; if so, then the court properly abstained from deciding the case. The Party Delegates suggest two reasons why the relief was not complete. First, they argue that the parties to Ehlers are different than the parties to the instant case. However, this argument is not relevant to Colorado River abstention. See Lumen Construction v. Brant Construction, 780 F.2d 691, 695 (7th Cir.1985) (additional parties in the federal case is not a valid argument against Colorado River abstention).[2]
 
 
 47
 Second, the Party Delegates argue that the issues in the instant case were not adequately considered in Ehlers. Specifically, they contend that the present action challenges three sections of the Michigan statute that were not challenged in state court: M.C.L.A. Sec. 168.593, Sec. 168.598, and Sec. 168.599(1). Most significant is section 168.599(1), which requires incumbent legislators to make up one half of the county executive committees of the parties, which select the State Party's officers. On its face, this section of the Election Law is more intrusive than any other section in terms of party governance because it extends far beyond preparations for the national convention. As such, it cannot be argued that National Party Rule 32(a) incorporates this section. On this basis, we hold that the federal complaint presented issues that differed enough from the state court proceedings to warrant exercising jurisdiction.
 
 
 48
 In addition, Ehlers only interpreted the Election Law while the instant action challenges the constitutionality of that law. The Ehlers court decided that "[a]lthough the federal cases relied upon by Defendant to protect the right of political parties are interesting, there seems to be no question here but that state party rules are subordinate to national party rules, and Rule 32(a) of the latter ... specifically gives state law precedence over state party rules." J.App. at 77. In Griffin v. Burns, 570 F.2d 1065, 1070-71 (1st Cir.1978), where voters sued state election officials on the ground that the invalidation of absentee and shut-in ballots was unconstitutional, the state officials argued that a previous state lawsuit by a candidate barred the federal suit by the voters under res judicata. The court rejected this argument, noting that the state court proceeding only interpreted the election law, while the federal action considered its constitutionality. Similarly, in the instant case, the Ehlers court considered the constitutional arguments only briefly in its oral decision. Its curt mention of the constitutional question demonstrates the inadequacy of the state forum. Thus, due to the additional issues raised in the federal complaint and the failure of the state court to adequately address the constitutional questions, we conclude that the district court should not have abstained under the Colorado River doctrine.
 
 
 49
 The State also argues that Pullman abstention would have been appropriate. Railroad Commission v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Under the Pullman abstention doctrine, federal courts should abstain when the construction of an unclear statute would obviate the necessity for a decision on the federal constitutional question. Tyler v. Collins, 709 F.2d 1106, 1108 (6th Cir.1983). In the instant case, the Election Law was not unclear; the only clarification required was of the National Party rules, not the Election Law. Because there is no special reason why state courts should interpret National Party rules, Pullman abstention would have been inappropriate.
 
 IV.
 
 50
 We now consider the merits--the constitutionality of the Election Law. The Party delegates contend that the Law violates the State Party's freedom of association, as protected under the First Amendment. In Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986), Connecticut's closed primary law conflicted with the State Republican Party's desire to hold a primary open to independent voters. Striking down the Connecticut law, the Supreme Court held that " '[t]he right to associate with the political party of one's choice is an integral part' " of the basic constitutional right to freedom of political association. Id. at 214, 107 S.Ct. at 548 (citation omitted). In Democratic Party of United States v. Wisconsin, 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981), the Court held that the State of Wisconsin could not bind a national political party to a state statute permitting cross-over voting in a primary. The Court noted that "a State, or a court, may not constitutionally substitute its own judgment for that of the Party. A political party's choice among the various ways of determining the makeup of a State's delegation to the party's national convention is protected by the Constitution." Id. at 123-24, 101 S.Ct. at 1020.
 
 
 51
 Similarly, in Eu, 109 S.Ct. at 1024, the Supreme Court noted that the California law requiring political parties to establish official governing bodies at the county level and specifying the members of these bodies "limits a political party's discretion in how to organize itself, conduct its affairs, and select its leaders." In contrast to Tashjian, where the issue was whether the party procedures could allow non-party members to vote in the primary, the Supreme Court in Eu noted that the associational rights involved there--the right of party members to associate with one another to select their party leaders--"are much stronger than those we credited in Tashjian." Id. With such strong rights burdened, the state may infringe upon that right only where it has a compelling state interest and its laws are narrowly tailored to serve that interest. Id. at 1019-20.
 
 
 52
 In Ferency v. Austin, 666 F.2d 1023 (6th Cir.1981), this court found that the Michigan Election Law was unconstitutional insofar as it controlled "the method of selection of the Michigan delegates to the Democratic National Convention" in violation of Democratic National Party rules. The instant case involves similar provisions of the Election Law--controlling selection of delegates at state and county conventions and the makeup of county executive committees of the political parties--which conflict with State Party rules. We hold that these portions of the Election Law significantly burden the right to freedom of association of the State Party and its members. By compelling the State Party to automatically place incumbent legislators and nominees to county offices as delegates, the Election Law infringes upon the right of political parties to choose a method for selection of their party nominees. By requiring the county executive committees to be made up of an equal number of elected delegates and legislators, the Election Law directly controls the internal structure of the political parties. Since Michigan has not demonstrated any compelling state interest for such a significant restriction of the freedom of association, we conclude that the relevant parts of the Election Law are facially unconstitutional. As such, we need not reach the remaining questions of whether the Election Law violates the one person, one vote requirement of the Fourteenth Amendment and the Voting Rights Act.[3]
 
 V.
 
 53
 The State brings up two additional reasons why the district court could have dismissed the complaint--case or controversy and laches. With respect to case or controversy, the State claims that it will not enforce the Election Law if it is contrary to National Party rules, and will not involve itself in the internal procedures of the State Party. We find this argument unpersuasive. The issue in this case is whether the Election Law is unconstitutional when it is contrary to the State Party Rules but not contrary to the National Party rules. That the State will not enforce the Election Law when directly in conflict with the National Party rules is not relevant to this case.
 
 
 54
 The State also maintains that the complaint could have been dismissed under the doctrine of laches. It argues that the Party Delegates knew about the Michigan statute at least since the change in the National Party rules in 1984, but waited until the "eleventh hour" to file suit. We find that laches would not have been a proper ground for dismissal. Because the Election Law had not been previously enforced, it did not pose a threat to the Party Delegates or the State Party before the Officials sued to enforce the Election Law just before the 1988 party conventions. Not until this time did the Party Delegates have a reasonable belief that the Election Law would operate so as to violate their constitutional rights. Therefore, the Party Delegates were not responsible for the delay, and the doctrine of laches would not have been a proper basis for dismissal.
 
 VI.
 
 55
 For the foregoing reasons, we REVERSE the judgment of the district court.
 
 
 
 [1]
 This section was amended in 1988 to provide that three district delegates be selected to act as National Convention Delegates
 
 
 [2]
 The district court suggested an alternative basis for dismissal of the intervening plaintiff (the State Party) and three of the Party Delegates who are members of the State Party Central Committee (and thus in privity)--that they are barred from raising their claims under the doctrine of res judicata and full faith and credit. 677 F.Supp. at 1356 n. 6. However, the complaint could not be dismissed under res judicata because two plaintiffs that were not members of the Central Committee would still remain to raise the constitutional claims. As such, we need not decide the application of the res judicata doctrine to the instant case
 
 
 [3]
 In their initial complaint, the Party Delegates argued that the automatic inclusion of incumbents and nominees as delegates and members of the county executive committees violates the rule of one person, one vote as applied to the selection of delegates. The district court stated that the Party Delegates had not later pursued this argument. The Supreme Court has explicitly left open the question of whether the one person, one vote principle applies to party caucuses and conventions, see Cousins v. Wigoda, 419 U.S. 477, 483-84 n. 4, 95 S.Ct. 541, 545-46 n. 4, 42 L.Ed.2d 595 (1975), and we decline to take up the issue today
 The Party Delegates also initially presented a claim that the automatic inclusion of the incumbents and nominees debased and diluted their voting rights in violation of the Voting Rights Act, 42 U.S.C. 1973 et seq. The district court refused to consider the argument until the Party Delegates identified which section of the Voting Rights Act was violated. Id. We agree.