674 So.2d 225 (1996)
The LOUISIANA REPUBLICAN PARTY and John Rondeno
v.
Honorable M.J. "Mike" FOSTER, Governor of Louisiana and W. Fox McKeithen, Secretary of State of Louisiana.
No. 96-CA-0314.
Supreme Court of Louisiana.
May 21, 1996.
*226 Richard P. Ieyoub, Attorney General, Roy Achille Mongrue, Jr., Angie R. LaPlace, Sheri Marcus Morris, Baton Rouge, for Applicant.
Christina Berthelot Peck, Baton Rouge, for Defendant.
KIMBALL, Justice.[*]

ISSUE
The issue in this case is whether those portions of Act 300 of 1995 amending La.R.S. 18:443.1.B. and 18:443.2(7) to provide for the method of electing members to the Republican Party State Central Committee unconstitutionally violate the Louisiana Republican Party's right of freedom of association found in the First and Fourteenth Amendments to the United States Constitution and Article I, Sections 7 and 9 of the Louisiana Constitution of 1974. Because the right of freedom of association applies to partisan political organization and necessarily includes the right to decide how the political association should be organized and governed, the instant statutes burden the associational rights of plaintiffs, and we find the state has not set forth a compelling state interest justifying its infringement on plaintiffs' constitutional rights. We therefore affirm the trial court's declaration of unconstitutionality of Act 300 of 1995 to the extent it amended La.R.S. 18:443.1.B. and 18:443.2(7).
We vacate, however, that portion of the trial court's judgment which declared La.R.S. 18:443.1.A. to be unconstitutional. Upon our declaration herein that the amendments in Act 300 of 1995 to La.R.S. 18:443.1.B. and 18:443.2(7) are unconstitutional, the applicable law becomes that in effect prior to the unconstitutional amendment. Therefore, the version of 18:443.1.B. in effect at the time of the unconstitutional amendment applies to the Republican Party elections and not La. R.S. 18:443.1.A., and, consequently, the trial judge unnecessarily reached the issue of the constitutionality of 18:443.1.A.

FACTS
Louisiana Revised Statutes 18:443.1 provides:
A. (1) The membership of the state central committee of a recognized political party shall be composed of two hundred ten members.
(2) Two members shall be elected from each of the districts from which members of the House of Representatives of the legislature are elected.
(3) ....
B. The membership of the state central committee of a recognized political party with which less than twenty-five percent of the registered voters in the state are affiliated shall be composed and apportioned as provided in R.S. 18:443.2(7).
Louisiana Revised Statutes 18:443.2 provides:
Notwithstanding any provision of law to the contrary, a state central committee of a recognized political party with which twenty-five percent or less of the registered voters in the state are affiliated on the day of the close of registration for the gubernatorial general election, shall be established, composed, apportioned, and elected as follows:
. . . .
(7)(a) The plan for the number of members of a state central committee and the apportionment thereof shall be based upon the number of registered voters affiliated with the political party on the day of the close of registration for the gubernatorial general election in the year preceding the presidential preference primary election and on the districts from which members *227 of the House of Representatives are elected as follows:
(i) If a district from which a member of the House of Representatives is elected has less than two thousand registered voters affiliated with the political party, such district shall be combined with an adjacent district or districts with the least number of registered voters affiliated with the political party, and one member of the state central committee shall be elected from such combined voting area.
(ii) If a district from which a member of the House of Representatives is elected has a number of registered voters affiliated with the political party of at least two thousand but less than four thousand, one member of the state central committee shall be elected from such district.
(iii) If a district from which a member of the House of Representatives is elected has a number of registered voters affiliated with the political party of at least four thousand but less than six thousand, two members of the state central committee shall be elected from such district.
(iv) If a district from which a member of the House of Representatives is elected has a number of registered voters affiliated with the political party of at least six thousand but less than eight thousand, three members of the state central committee shall be elected from such district.
(v) If a district from which a member of the House of Representatives is elected has a number of registered voters affiliated with the political party of at least eight thousand but less than ten thousand, four members of the state central committee shall be elected from such district.
(vi) If a district from which a member of the House of Representatives is elected has a number of registered voters affiliated with the political party of ten thousand or more, five members of the state central committee shall be elected from such district.
(b) A state central committee shall adopt a plan to provide for the combination of districts in accordance with Subparagraph (a) of this Paragraph and such plan shall be effective if the committee files a copy of the plan with the secretary of state not later than December first of the year preceding the election. If a state central committee does not adopt and file the plan as provided herein, the secretary of state shall provide for the combination of districts as provided in Subparagraph (a) of this Paragraph no later than December fifteenth of the year preceding the election.
It is undisputed that while the Republican Party falls under the dictates of La.R.S. 443.1.B. and R.S. 443.2, the Democratic Party does not because it is a recognized political party with which more than twenty-five percent of the registered voters in the state are affiliated.
Louisiana Revised Statutes 443.2(7)(a) provides for the number of members and apportionment thereof of the state central committee of a political party with which less than twenty-five percent of the registered voters of the state are affiliated. Louisiana Revised Statutes 443.2(7)(b) provides that the state central committee "shall" adopt a plan "in accordance" with subparagraph (a), and if the committee does not adopt and file the plan, the secretary of state shall provide for an election conducted pursuant to subparagraph (a).
Specifically, R.S. 443.2(7)(a)(i)-(vi) provide that if a house district has less than 2,000 party members, it shall be combined with an adjacent district(s) containing the least number of party members to result in a combined number of at least 2,000 voters. If a house district or combined districts have at least 2,000 but less than 4,000 registered voters who are party members, one member shall be elected from that district. If a house district or combined districts have at least 4,000 but less than 6,000 registered voters/party members, two committee members shall be elected therefrom. If a house district has at least 6,000 but less than 8,000 registered voters/party members, three committee members shall be elected therefrom. If a district has at least 8,000 but less than 10,000 registered voters/party members, four committee members shall be elected therefrom. If a district has at least 10,000 registered voters/party members or more, *228 five committee members shall be elected therefrom.
Prior to the amendments to the challenged laws, the law authorized the Republican Party to adopt and file any plan for the apportionment of voters for the election of its state central committee members. On December 14, 1991, the Republican Party State Central Committee adopted a plan which provided for the committee to be composed of 169 members. Each of the 105 house districts could elect one member to the committee regardless of the number of registered voters residing therein. The remaining 64 members were to be elected from the various house districts based on the number of registered Republican voters residing therein with the result that house districts with 0 to 4,000 registered Republicans elected one member, districts with 4,001 to 6,000 registered Republicans elected two members, districts with 6,001 to 8,000 registered Republicans elected three members, and districts with 8,001 or more registered republicans elected four members. This was the plan in effect when Acts 1995, No. 300 was passed.
Plaintiffs, the Louisiana Republican Party and John Rondeno, a registered Republican and member of the Republican Party State Central Committee, filed suit on December 7, 1995 challenging the constitutionality of the amendments in Act 300 of 1995 to La.R.S. 18:443.1.B. and 443.2(7) as well as the constitutionality of R.S. 18:443.1.A.[1] The suit sought an injunction of the enforcement of the above statutes and a declaration that the statutes were unconstitutional under the First and Fourteenth Amendments to the U.S. Constitution and Article I, Secs. 7 and 9 of the Louisiana Constitution of 1974. After issuing a temporary restraining order, the trial judge, at a hearing on the request for a preliminary injunction, declared from the bench that La.R.S. 18:443.1.B., 443.2(7), and 18:443.1.A. as applied to the Republican Party, were unconstitutional. Pursuant to La. Const. Art. V, Sec. V(D), the state obtained a direct appeal to this court.

THE LAW
The First Amendment to the United States Constitution provides:
Congress shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.
The United States Supreme Court has repeatedly held that freedom of association is protected by the First Amendment. Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). The protections of the First Amendment are made applicable *229 to the states through the Fourteenth Amendment. See, e.g., Williams, Id., Edwards v. South Carolina, 372 U.S. 229, 235, 83 S.Ct. 680, 683, 9 L.Ed.2d 697 (1963).[2] The fundamental right of freedom of association protected by the above constitutional provisions includes the right of persons to engage in partisan political organization. Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 214, 107 S.Ct. 544, 548, 93 L.Ed.2d 514 (1986); Cousins v. Wigoda, 419 U.S. 477, 487, 95 S.Ct. 541, 547, 42 L.Ed.2d 595 (1975); Kusper v. Pontikes, 414 U.S. 51, 56-57, 94 S.Ct. 303, 307, 38 L.Ed.2d 260 (1973) ("There can no longer be any doubt that freedom to associate with others for the common advancement of political beliefs and ideas is a form of `orderly group activity' protected by the First and Fourteenth Amendments."); Williams, supra, 393 U.S. at 30-31, 89 S.Ct. at 10.
Furthermore, "[a]ny interference with the freedom of a party is simultaneously an interference with the freedom of its adherents." Cousins, supra, 419 U.S. at 487, 95 S.Ct. at 547 (quoting Sweezy v. New Hampshire, 354 U.S. 234, 250, 77 S.Ct. 1203, 1212, 1 L.Ed.2d 1311 (1957)). The freedom to associate for the advancement of political beliefs "necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only." Democratic Party of the United States v. Wisconsin, 450 U.S. 107, 122, 101 S.Ct. 1010, 1019, 67 L.Ed.2d 82 (1981).[3] See also San Francisco County Democratic Central Committee v. Eu, 826 F.2d 814, 827-28 (9th Cir.1987), aff'd, Eu v. San Francisco County Democratic Central Committee, 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) ("Because the right of association would be hollow without a corollary right of self-governance, `there must be a right not only to form political associations but to organize and direct them in the way that will make them most effective'.... [The freedom of association] necessarily presupposes the freedom to identify the people who run the association."). The power to regulate the time, place, and manner of elections does not justify, without more, the abridgment of fundamental rights such as the freedom of political association. Eu, 489 U.S. at 222, 109 S.Ct. at 1019, Tashjian, 479 U.S. at 217, 107 S.Ct. at 550. Rather, the state must set forth a compelling state interest which justifies the abridgment of the plaintiffs' rights. Therefore, once it is determined that a state law burdens the rights of political parties and their members, the challenged law "can survive constitutional scrutiny only if the State shows that it advances a compelling state interest, ... and it is narrowly tailored to serve that interest." Eu, 489 U.S. at 222, 109 S.Ct. at 1019 (emphasis added).[4]

ANALYSIS
When a state restricts a party's freedom to choose its leadership in the way it sees fit, the state has burdened the party's First Amendment right of freedom of association. In this case, the members of the Republican Party State Central Committee, speaking through their rules, chose to define *230 their associational rights by providing in the 1991 plan for the number of committee members to be elected and the method therefor. The challenged statutes, which were passed without presentation to or approval by the Republican Party State Central Committee, burden plaintiffs' right to freedom of association by mandating a method to be used in apportioning registered Republican voters for the election of the party's state central committee members different from that which the Republican Party State Central Committee members adopted in 1991. Clearly, the statutes burden the Party's right to govern itself as it thinks best. The legislature had decided that the members of the state central committee should be elected under a system which more closely protects and effectuates the principle of "one-person, one-vote" than the 1991 plan adopted by the Committee, and has mandated that the Committee adopt this plan, or the state will adopt it for them. Having determined the instant statutes burden the plaintiffs' constitutional rights, we now turn to the issue of whether the statutes serve and advance compelling state interests.
In this case, the state argues that its statutorily mandated plan providing for the number of central committee members to be elected as well as for the geographic location from which each member shall be elected is justified by: (1) its interest in having every election it conducts be fair and held in accordance with the principle of "one-person, one-vote"; (2) its interest in preserving the integrity of the state election process; and (3) its interest in assuring that public funds are not expended to finance an inherently unfair election. In sum, the state argues that its actions are justified because the elections as conducted under the Republican Party State Central Committee 1991 plan were in violation of the principle of one-person, one-vote, that this inequity may possibly taint voter confidence in other state elections, and that the state should not have to pay for any elections which are held in violation of the one-person, one-vote principle.
Even if we were to find the legislature's plan for apportionment of the state central committee seats more closely effectuates the principle of one-person, one-vote, such a finding is of no benefit to the state for we find such a principle is inapplicable in the context of an election of members to a political party state central committee. In a long line of cases including Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963), Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964), Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and Avery v. Commissioners of Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), the United States Supreme Court recognized the U.S. Constitution protects the right of all qualified citizens to vote, and this right is unconstitutionally denied in violation of the Equal Protection Clause of the Fourteenth Amendment by the dilution of the weight of a citizen's vote. Therefore, the Constitution was held to require that "as nearly as is practicable one man's vote in a[n] ... election is to be worth as much as another's." Wesberry, 376 U.S. at 7-8, 84 S.Ct. at 530.
This principle has never been held to be required in any and all elections of any sort but rather, has consistently been mandated only in national, state and local elections of officials who exercise "governmental powers." See, e.g., Wesberry, supra (election of members of Congress); Reynolds, supra (election of state legislators); Avery, supra (election of Texas county commissioners)[5]; Hellebust v. Brownback, 42 F.3d 1331 (10th Cir., 1994) (election of State Board of Agriculture members). In Hadley v. Junior College District of Metropolitan Kansas City, Mo., 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970), the Court directly addressed the issue of which elections the "one-person, one-vote" principle applied to. Therein, the state argued the principle of one person, one vote did *231 not apply to the election of purely local school district trustees whose powers and duties included the levying and collection of taxes, the issuance of bonds, the hiring and firing of teachers, the confecting of contracts and collection of fees, and the supervision and discipline of students. The Court rejected this argument, noting that the trustees "perform important governmental functions within the districts ... general enough and [with] sufficient impact throughout the district to justify the conclusion that the [one person-one vote] principle ... should ... be applied." Id. at 54, 90 S.Ct. at 794.[6]
Likewise, in Board of Estimate of City of New York v. Morris, 489 U.S. 688, 109 S.Ct. 1433, 103 L.Ed.2d 717 (1989), residents of Brooklyn, New York City's most populous borough at the time, challenged the method of election of members to the Board of Estimate as being in violation of the Fourteenth Amendment's "one person, one vote" protection because the Board consisted of three members elected citywide, plus the elected presidents of each of the city's five boroughs, without any regard for the population of each borough. The City argued that election to the Board of Estimate was not subject to the "one person, one vote" protection because the Board did not exercise legislative powers. Noting that the doctrine of "one person, one vote" applied to the "legislative bodies of the Nation, State or locality," Id. at 693, 109 S.Ct. at 1438, the Court held that the powers of the Board over the city's 7 million inhabitants were general enough and have sufficient impact throughout the city "to require that elections to the body comply with equal protection strictures." Id. at 696, 109 S.Ct. at 1439.[7]
Applying the above cases to the instant situation, it is readily apparent from the record that members to the state central committee of a political party do not appear to nor are alleged to perform any governmental function at all, much less an important one. In fact, it appears the sole function of the state central committee members is to administer the party business. There is no allegation the committee members represent the people in the conduct of their government. The burden of proving the committee members serve an important governmental function similar to those exercised in the above cited cases is on the state in this case, and we find the state has failed to cite any duty or power which the instant committee members exercise which constitutes a "governmental power" within the context of the above cases. In light of the above, we find the principle of one-person, one-vote is not constitutionally mandated by the Fourteenth Amendment in the context of the election of members to the Republican Party State Central Committee. Therefore, the state's interest of insuring the application of the principle of one-person, one-vote to the election of party committee members is not compelling enough to justify the state's infringement on this political party's freedom of association.
The state additionally argues it has a general interest in upholding the integrity of the state election process, it should not have to expend public funds to finance an "inherently unfair" election [i.e. one which is not held pursuant to the principle of "one person-one vote"], and such an expenditure may possibly taint voter confidence in other state elections. We find that none of these asserted state *232 interests justify the significant infringement on the plaintiffs' rights of freedom of association in this case.
In Eu, supra, the California Elections Code provided that the official governing bodies of political parties could not endorse any candidate in a direct primary election, provided for the size and composition, i.e. the apportionment, of the state central committees, set forth rules governing the selection and removal of committee members, fixed the maximum term of office for the chair of the state central committee, required that the chair rotate between residents of northern and southern California, specified the time and place of committee meetings, and limited the dues the parties may impose on members. The state central committees, various county central committees, and members of these committees for both parties brought a suit challenging the constitutionality of these laws.
Regarding the restrictions on the organization and the composition of the state central committee of the parties, the Court first noted the laws directly implicate the associational rights of political parties and their members, ("Freedom of association ... encompasses a political party's decisions about the identity of, and the process for electing, its leaders." Eu, supra, 489 U.S. at 229, 109 S.Ct. at 1023.) and then turned to whether California had shown the challenged laws served a compelling state interest. California argued the laws helped to preserve the integrity of its election process. The Court found that although such a state interest was indeed compelling, the challenged laws were not necessary to the furtherance of the integrity of the electoral process because the organization and composition of the state central committee was a purely internal matter which did not involve or affect the "order and fairness of elections" of persons to government positions or political office.
A State indisputably has a compelling interest in preserving the integrity of its election process. Toward that end, a State may enact laws that interfere with a party's internal affairs when necessary to ensure that elections are fair and honest. For example, a State may impose certain eligibility requirements for voters in the general election even though they limit parties' ability to garner support and members. We have also recognized that a State may impose restrictions that promote the integrity of primary elections. None of these restrictions, however, involved direct regulation of a party's leaders. Rather, the infringement on the associational rights of the parties and their members was the indirect consequence of laws necessary to the successful completion of a party's external responsibilities in ensuring the order and fairness of elections.
In the instant case, the State has not shown that its regulation of internal party governance is necessary to the integrity of the electoral process.... [A] State cannot substitute its judgment for that of the party as to the desirability of a particular internal party structure....
In sum, a State cannot justify regulating a party's internal affairs without showing that such regulation is necessary to ensure an election that is orderly and fair. Because California has made no such showing here, the challenged laws cannot be upheld.
Eu, 489 U.S. at 231-33, 109 S.Ct. at 1024-25 (citations and footnotes omitted).
The state argues the above quoted phrase from Eu supports the proposition that it can regulate the election of state central committee members in order to ensure that this "election" is "orderly and fair." This argument is insupportable for two reasons. First, as explained earlier, neither the United States nor Louisiana Constitutions require the application of the "one-person, one-vote" principle to the election of state central committee members. Therefore, the election of such members pursuant to the 1991 Republican Party plan is not constitutionally unfair or in need of any state regulation to make it constitutionally fair or orderly. Second, a comprehensive reading of the Eu opinion makes it clear that the "fair and orderly elections" to which it refers are those in which government officers who serve the people are elected, and not elections of state central committee members who serve members of the organization only. Applying the *233 principles of the Eu opinion to this case, and especially in light of the fact that the election of the committee members under the 1991 plan is not unfair and does not lack integrity in the first instance due to the fact that the law in any case does not require the election to be held pursuant to the "one-person, one-vote" principle, the State's asserted interest in preserving the "integrity" of elections is not compelling in this case.[8]
For the same reasons, the state's remaining arguments must fall. Since an election of committee members held pursuant to the 1991 plan does not violate the Fourteenth Amendment's principle of "one-person, one-vote", the state's financing of such an election cannot "taint" voter confidence in that or in any other election. Furthermore, it is the state which has decided to voluntarily hold and use public funds to pay for these political party central committee member elections. We do not believe the state can argue it has a compelling state interest justifying the infringement of plaintiffs' right of freedom of association in not having to pay for an election it believes is unfairly held [even despite our finding that the elections under the 1991 plan are not constitutionally unfair] where it has volunteered to finance the elections in the first place. In other words, we know of no law which compels the state to finance these elections, unfair or not, in the first place.[9]
Finally, we note that it is suspect whether the state itself believes its asserted state interests are indeed compelling considering the fact that the legislature did not deem it necessary to provide for the application of the "one-person, one vote" principle to the election of members to the Democratic Party State Central Committee. The Democratic Party selects its state central committee members pursuant to La.R.S. 18:443.1.A.(1)-(3) which provides for the election of two members from each House of Representatives district regardless of the number of registered Democrats located in each district. Interestingly, the 1991 Republican Party plan which somewhat took into consideration the number of registered Republicans in each district and which the legislature felt compelled to supplant with La.R.S. 443.1.B. and 443.2(7) assertedly in order to make the election more fair, more closely effectuates the "one-person, one-vote" principle than does the current method of electing Democratic Party State Central Committee members mandated by La.R.S. 443.1.A(1)-(3) which provides for the election of two committee members from each house district completely irrespective of the number of registered Democrats in each district.
The trial judge also declared La.R.S. 18:443.1.A. unconstitutional, apparently under the belief of and in response to plaintiffs' arguments that should this court find Act 300 of 1995 to be unconstitutional, then Section 443.1(A) would apply to the committee's election and would also be unconstitutional for the same reasons. However, this court has noted that an unconstitutional act which purports to amend a prior statute cannot accomplish that objective, and, the "unconstitutional act, having no effect, can amend nothing. Instead, the applicable law is provided by the statute as worded prior to the unconstitutional amendment." See Concerned Business & Property Owners of DeSoto, Inc. v. DeSoto Parish School Board, 531 So.2d 436, 443 (La.1988) (and cases cited therein).
Act 300 of 1995 is unconstitutional to the extent it amended and reenacted La.R.S. *234 18:443.1.B. and 18:443.2(7). Those amendments to that extent are therefore ineffective, and the statute as worded prior to those amendments remains in effect. Prior to its amendment by Act 300 of 1995, R.S. 18:443.1, as amended by Act 949 of 1992, provided in pertinent part:
A. (1) The membership of a state central committee of a recognized political party shall be composed of two hundred ten members.
(2) Two members shall be elected from each of the districts from which members of the House of Representatives of the legislature are elected.
* * * * * *
B. The membership of the state central committee of a recognized political party with which less than twenty-five percent of the registered voters in the state are affiliated shall be composed and apportioned as provided in this Section. However, the state central committee of such a political party may adopt a plan to otherwise provide for the number of members of such committee and the apportionment thereof and such plan shall be effective if the committee files a copy of the plan with the secretary of state not later than January first of the year of the election.
No party to the instant action appears to dispute that the Republican Party is a political party with which less than twenty-five percent of the registered voters in the state are affiliated. In 1991, the Republican Party State Central Committee adopted a plan to provide for the number of committee members and the apportionment thereof. The very filing of the instant suit as well as their arguments herein make it clear the Party desires that the election be conducted pursuant to the 1991 plan. Therefore, La.R.S. 18:443.1.B. as it was amended by Act 949 of 1992 applies to the Republican Party and not La.R.S. 18:443.1.A. Consequently, the trial judge unnecessarily addressed the issue of whether 18:443.1.A. as applied to the Republican Party is unconstitutional, and that portion of his judgment is vacated.

CONCLUSION
In conclusion, we find that the amendments to La.R.S. 18:443.1.B. and 18:443.2(7) in Act 300 of 1995 which provided for the number of members and the apportionment of voters in the election of persons to the Republican Party State Central Committee unconstitutionally violate the Louisiana Republican Party's right of freedom of association protected in the First and Fourteenth Amendments to the United States Constitution and in Article I, Sections 7 and 9 of the Louisiana Constitution of 1974. The pertinent portions of the statutes burden the associational rights of plaintiffs, and we find the state has not set forth a compelling state interest justifying its infringement on plaintiffs' constitutional rights. We vacate, however, that portion of the trial court's judgment which declared La.R.S. 18:443.1.A. to be unconstitutional insofar as it appears the version of La.R.S. 18:443.1.B. which existed prior to the unconstitutional 1995 amendments now applies to the election of Republican Party Central Committee members. Therefore, the trial judge unnecessarily reached the issue of the constitutionality of 18:443.1.A.
AFFIRMED IN PART, VACATED IN PART. The Republican Party is given 15 days from the date of finality of this judgment in which to file its plan with the Secretary of State under R.S. 18:443.1.B. as it was amended by Act 949 of 1992.
JOHNSON, J. concurs in result.
NOTES
[*] Because of the vacancy created by the resignation of Dennis, J., now a judge on the United States Court of Appeals for the Fifth Circuit, there was no justice designated "not on panel" under Rule IV, Part 2, Sec. 3. Panel included Chief Justice Calogero and Justices Marcus, Watson, Lemmon, Kimball, Johnson and Victory.
[1] The petition explained:

Act 300 requires the state central committee of the Party to adopt an apportionment plan in accordance with the provisions R.S. 18:443.2(7)(a) not later than December 1, 1995. Act 300 further requires that in the event the state central committee of the Party fails to adopt such a plan not later than December first, then the Secretary of State of Louisiana shall provide for such an apportionment plan no later than December 15, 1995.
Under the provisions of R.S. 18:443.2(7) prior to its amendment by Act 300, the Party's state central committee was authorized to adopt a plan to provide for the number of members of the state central committee and the apportionment of the state central committee. Under the plan adopted by the Party's state central committee on December 14, 1991, the Party's state central committee is composed of 169 members. Each of the 105 House of Representative Districts elects one member to the Party's state central committee regardless of the number of registered voters affiliated with the Party who reside in the House District. The remaining 64 members are allocated to the various House of Representative Districts based on the number of registered voters affiliated with the Party in that House District.
Under the provisions of R.S. 18:443.3(7), as amended by Act 300 of 1995, any district from which a member of the House of Representatives is elected which had less than 2000 registered voters affiliated with the Party at the close of voter registration for the gubernatorial general election would not be able to elect a member to the Party's state central committee, and would be combined with one or more other House Districts for purposes of election of a member to the state central committee.
The petition additionally alleges that should La. R.S. 18:443.2(7) and 18:443.1(B) be found unconstitutional, R.S. 18:443.1(A) may be applicable to the Republican Party, which statute is also unconstitutional because it would provide for the election of two members from each house district, depriving the committee of its ability to govern its own composition.
[2] The freedom of association protected by the First and Fourteenth Amendments is also guaranteed by Article I, Sections 7 and 9 of the Louisiana Constitution of 1974 which provide:

Art. I, Sec. 7:
No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom.
Art. I, Sec. 9:
No law shall impair the right of any person to assemble peaceably or to petition government for a redress of grievances.
[3] "Freedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being." Democratic Party of U.S., supra, 450 U.S. at 122 n. 22, 101 S.Ct. at 1019 n. 22 (quoting L. Tribe, American Constitutional Law 791 (1978)).
[4] See also Cousins, supra, 419 U.S. at 489, 95 S.Ct. at 548 ("Even though legitimate, the `subordinating interest of the State must be compelling' to justify the injunction's abridgment of the exercise by petitioners and the National Democratic Party of their constitutionally protected rights of association."); Williams, supra, 393 U.S. at 31, 89 S.Ct. at 11 ("[O]nly a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms.").
[5] As an example of what the Court considered to be "governmental powers" sufficient to trigger the application of the "one person, one vote" principle, consider the duties of the Midland County Commissioners. They established and maintained the county jail, appointed numerous county officials, made contracts, built roads and bridges, administered the county welfare system, performed duties in connection with elections, set the county tax rate, and, inter alia, adopted the county budget.
[6] See also Ball v. James, 451 U.S. 355, 366, 101 S.Ct. 1811, 1818, 68 L.Ed.2d 150 (1981) where the United States Supreme Court held the principle of "one-person, one-vote" did not apply to the election of members to the Salt River District.

[T]he District simply does not exercise the sort of governmental powers that invoke the strict demands of Reynolds. The District cannot impose ad valorem property taxes or sales taxes. It cannot enact any laws governing the conduct of citizens, nor does it administer such normal functions of government as the maintenance of streets, the operation of schools, or sanitation, health, or welfare services.
See also Salyer Land Co. v. Tulare Lake Basin Water Storage District. 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973) holding similarly.
[7] The Board's fiscal responsibilities included calculating sewer and water rates, tax abatements, and property taxes on urban development projects. It managed all city property, exercised plenary zoning authority, dispensed all franchises and leases on city property, fixed the salaries and compensation of all persons compensated with city money, and granted all city contracts. The Board also had legislative powers, including modifying and approving the city's capital and expense budgets.
[8] See also Heitmanis v. Austin, 899 F.2d 521 (6th Cir.1990). Michigan election law required, inter alia, that incumbent legislators nominated by their party sit on the executive committee of the county party. The Republican Party State Central Committee rules generally provided that incumbents should not automatically be delegates to any state or county convention or caucus. On appeal to the Sixth Circuit Court of Appeals, the court held that "[b]y requiring the county executive committees to be made up of an equal number of elected delegates and legislators, the Election Law directly controls the internal structure of the political parties." Id. at 529. Because the state was unable to demonstrate any compelling state interest justifying the "significant restriction of the freedom of association," the state laws were found to be unconstitutional.
[9] A similar argument was made and rejected in Tashjian, supra. Therein, the Supreme Court rejected Connecticut's argument that because of the administrative and financial cost an open Republican primary would have on the state, it was entitled to require the Republican Party have a closed primary. The Court pointed out that the state could just as well elect not to have a primary system at all.